NUMBER 13-06-00666-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


ERASMO GARZA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 28th District Court of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Chief Justice Valdez



 Appellant, Erasmo Garza, brings this appeal following his conviction for sexual
assault of a child, aggravated sexual assault of a child, and indecency with a child. We
modify the trial court's judgment and affirm it as modified. 

I. Background 

 Appellant sexually abused his own daughter, C.G., from the time that she was seven
years old until she was fourteen, when she unexpectedly gave birth to his child. At trial,
C.G. testified to numerous instances of sexual abuse, including touching and masturbation,
sexual intercourse, and various incidents of anal intercourse. 

 Appellant was indicted on four counts of aggravated sexual assault of a child, one
count of indecency with a child, and one count of sexual assault of a child. A jury found
appellant guilty on each count, assessed life sentences for each of the first four counts of
aggravated sexual assault of a child, and twenty-year sentences for the indecency and
sexual assault counts. (1) The trial court ordered that the sentences all run consecutively. 
This appeal ensued. 

II. Ex Post Facto

 By his first point of error, appellant contends the trial court violated the ex post facto
provisions of the state and federal constitutions. (2) Specifically, he argues the trial court
erred by ordering the sentences for counts three, four, and five, to run consecutively to
each other. 

 Section 3.03 of the penal code provides that if an accused is found guilty of more
than one offense arising out of the same criminal episode, the sentences may run
consecutively if each sentence is for a conviction of indecency with a child, aggravated
sexual assault, and other enumerated offenses. Tex. Penal Code Ann. § 3.03(b)(1)
(Vernon Supp. 2007). However, this particular section became effective September 1,
1997, and only applies to offenses which were committed after this date. See Ponce v.
State, 89 S.W.3d 110, 119 (Tex. App.-Corpus Chrisit 2002, no pet.). Prior to the effective
date of the amendment, section 3.03 provided that if an accused is found guilty of more
than one offense arising out of the same criminal episode, the sentences for each offense
shall run concurrently. Id. 

 Here, appellant was found guilty of two counts of aggravated assault and one count
of indecency with a child, all committed prior to September 1, 1997. Thus, because these
three offenses occurred prior to the amendment of section 3.03 of the penal code, the
sentences should not have been ordered to run consecutively. Because the cumulation
of sentences essentially constitutes an increase in punishment, we conclude that "to allow
cumulation of punishment under authority of a statute that did not so provide at the time
of the offense violates the Ex Post Facto Clause." Id. (quoting Johnson v. State, 930
S.W.2d 589, 593 (Tex. Crim. App. 1996)). Appellant's first issue is sustained. 

III. State's Hypothetical Question 

 By his second issue, appellant complains of a hypothetical question posed by the
State to his defense expert. 

 At the punishment stage of trial, appellant called psychologist Dr. William Flynn who
testified that he had conducted a complete psychiatric examination of appellant, and
formed the opinion that appellant "has the lowest risk of re-offending sexually, and has the
lowest risk of re-offending in other violent matters [sic]." The record shows that Dr. Flynn
made extensive use of standardized tests in making this determination. At the hearing, Dr.
Flynn described his examination of appellant as consisting of several parts, one of which
included a determination of whether appellant had any previous convictions for "non-contact" sexual offenses. According to Dr. Flynn, the fact that appellant did not have any
other "deviant interest," such as, "looking through other people's windows" or "exposing
himself [to others]," placed appellant in a low-risk category for re-offending. 

 On cross-examination, the State asked Dr. Flynn whether he knew how appellant
was apprehended. Dr. Flynn answered that he was unaware of the circumstances
surrounding appellant's apprehension. The State then asked to approach the bench. The
following bench conference then occurred: 

Q [State]: He was looking into windows when he was caught, finally, a year
later. And I would like to go into that. I just learned that myself. And he
mentioned looking into windows quite a bit during his testimony. 


[Defense counsel]: There is no evidence he's ever looked into windows. We
haven't heard any evidence on the record of that. If somebody is telling him
that in the peanut gallery, its not relevant.


[State]: That would have made the risk factor higher. He even blurted out
about looking in windows. So I would like to be able to ask him, in good faith
as I understand it, he was looking in windows and that is how he finally got
caught. 


[The Court]: That is not in evidence.


[Defense Counsel]: It's not in evidence.


[State]: It is not in evidence but I can ask him about it and then I can bring
officers-


[The Court]: You can ask about a hypothetical


[State]: Okay. 


[The Court]: But I think he already testified to that. 


[Defense counsel]: He already testified to that. Why do we need to go over
that - 


[State]: Well, then -


[Defense counsel]: I'm going to object to the hypothetical. 


 The bench conference concluded, and the State continued with its cross-examination: 

[State]: Hypothetically, Doctor, if someone were on the run for a year and
were caught looking into windows, and that's how they were finally caught for
an outstanding warrant, would that change the risk factor for you?


[Defense counsel]: I'm going to object to the question. There is no evidence
that anybody was looking in windows. It is irrelevant and it is not in evidence. 


[State]: Your Honor, the Court allowed me to ask a hypothetical question on
it. I would be happy to blurt out why I feel that it is relevant, but I think we
need to approach. 


[Defense counsel]: Your Honor, we can go on hypotheticals forever,
especially with a psychologist. We can ask him a myriad of hypotheticals. 
It is irrelevant. It is not even any part of this case. 


[The Court]: She is allowed to question on hypotheticals. Overruled. 


* * * * *


Q [State]: Do you think that is something [sic] pretty dangerous when
someone peeks into windows. 


A: I think it is pretty dangerous and increases the risk of re-offending when
someone is convicted of peeping in windows. 


Q: Okay. So if someone is caught peeking in windows but not convicted of
it yet, that is - 


A: Counselor, I don't know how to answer your question. Caught means -


[Defense counsel]: Your Honor, I'm going to object right now. She is trying
to insert in the jury's mind that my client had been going around peeking
through windows. None of this is in evidence and it is irrelevant. It is
improper, too. 


[State]: Your Honor, I'm asking in good faith. 


[The Court]: I think he has answered the question. Can we please move on. 


[State]: Pass the witness. 


 The above testimony shows that appellant objected on the basis of relevance and
assuming facts not in evidence. To the extent he argues on appeal that the probative
value of the question was substantially outweighed by the danger of unfair prejudice,
appellant's trial objection did not preserve error for review as to rule 403 of the Texas Rules
of Evidence. See Montgomery v. State, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990). 

 After reviewing the record, we find that appellant correctly pointed out that the State
did in fact ask Dr. Flynn to assume a fact which was not in evidence because there was
no testimony that appellant had previously been caught looking through windows. 
Nevertheless, when a hypothetical question is addressed to an expert witness, the
assumptions on which the hypothetical is based are not necessarily limited to those
assumptions which are supported by the evidence. Pyles v. State, 755 S.W.2d 98, 118
(Tex. Crim. App. 1988). Hypothetical questions may also include assumptions based on
facts that are within the personal knowledge of the witness or that are assumed from
common or judicial knowledge. Id. 

 Here, to determine appellant's future dangerousness, Dr. Flynn administered a
Static 99 exam, which he deemed as "both reliable and valid." According to Dr. Flynn, the
exam has a 75% prediction rate, and added "if I say somebody is going to be low risk, I'm
going to be right a lot." The exam itself uses ten factors to correlate with sexual offense
recidivism; among the factors to consider is whether a person has previous convictions for
"non-contact sex offenses." Dr. Flynn repeatedly emphasized that because appellant does
not have any previous sexual offense convictions, he "has the lowest risk of re-offending
sexually." 

 Once Dr. Flynn testified to these conclusions, the State was entitled to inquire into
the circumstances of his research and investigation, the manner in which he conducted his
inquiry, and the materials upon which he relied. See Wheeler v. State, 67 S.W.3d 879,
883 (Tex. Crim. App. 2002). Here, the State's hypothetical went directly to the validity of
conclusions based on the Static 99 test, and was factually premised on Dr. Flynn's own
expert testimony, i.e., that a person who has exhibited deviant sexual behavior, such as
looking through windows, is more inclined to re-offend. In other words, Dr. Flynn was
merely asked to factually assume what he already knew, and his answer to the State's
hypothetical was merely a repeat of what he had previously attested to. We find no error. 
See Barefoot v. State, 596 S.W.2d 875, 887-88 (Tex. Crim. App. 1980) (an opponent may,
on cross-examination, secure the expert's opinion upon a different set of facts, including
facts assumed by the opponent in accordance with his own theory of the case); Ex parte
Woods, 745 S.W.2d 21, 26 n.4 (Tex. Crim. App. 1988) (citing the Supreme Court's ruling
in Barefoot v. Estelle, 463 U.S. 880 (1983), for the proposition that expert testimony, when
based on a hypothetical, "is commonly admitted as evidence where it might help the fact-finder to do its assigned job"); Held v. State, 948 S.W.2d 45, 53 (Tex. App-Houston [14th
Dist.] 1997, pet. ref'd) (finding hypothetical question proper where assumed facts derived
from expert's own testimony). 

 Furthermore, the confines of "relevancy" are not so strict in cross-examination as
in direct examination. See Carroll v. State, 916 S.W.2d 494, 497-98 (Tex. Crim. App.
1996). And, during the punishment phase of trial for a non-capital felony offense,
determining what evidence should be admitted is a function of policy rather than a question
of logical relevance. See Sunbury v. State, 88 S.W.3d 229, 233 (Tex. Crim. App. 1999);
Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). A trial court's decision to
admit or exclude evidence is reviewed under an abuse of discretion standard. See
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Green v. State, 934
S.W.2d 92, 101-02 (Tex. Crim. App. 1996). When the standard of review is abuse of
discretion, a reviewing court should not reverse a trial judge's decision whose ruling was
within the zone of disagreement. Weatherred, 15 S.W.3d at 542. 

 The trial court's ruling was, at a minimum, within the zone of reasonable
disagreement, and was not an abuse of discretion. Appellant's second issue is overruled. IV. Prosecutorial Misconduct 

 By his third issue, appellant asserts the State engaged in prosecutorial misconduct. 
Specifically, appellant contends that "the prosecutor's announcement that she would be
'happy to blurt out' why she felt the hypothetical was relevant was a cynical histrionic
attempt to prejudice the jury." 

 In order to preserve error in cases of prosecutorial misconduct, the defendant must
(1) make a timely and specific objection; (2) request an instruction that the jury disregard
the matter improperly placed before the jury; and (3) move for a mistrial. See Penry v.
State, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); Montoya v. State, 43 S.W.3d 568, 572
(Tex. App.-Waco 2001, no pet.). Regarding specificity, a party should "let the trial judge
know what he wants, why he thinks himself entitled to it, and to do so clearly enough for
the judge to understand him at a time when the court is in proper position to do something
about it." Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). 

 Appellant did not object in the trial court on the grounds of prosecutorial misconduct,
nor did he receive an adverse ruling on such an objection. Appellant did not seek an
instruction that the jury disregard any false testimony that may have been admitted, nor did
appellant seek a mistrial based on any alleged prosecutorial misconduct. Thus, appellant
failed to preserve any error for appeal. See Tex. R. App. P. 33.1; Penry, 903 S.W.2d at
764. 

 Appellant's third issue is overruled. 

V. Conclusion

 Accordingly, we modify the trial court's judgment by deleting the cumulation order
for counts three, four, and five, and affirm the judgment as modified. 



 

 ROGELIO VALDEZ

 Chief Justice 



 

Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 20th day of March, 2008.
1. The counts, offenses, and dates of the offenses appellant was convicted of are as follows: 


 Count one: Aggravated Sexual Assault of a Child, June 4, 1999;

 Count two: Aggravated Sexual Assault of a Child, August 4, 1998; 

 Count three: Aggravated Sexual Assault of a Child, August 4, 1996; 

 Count four: Aggravated Sexual Assault of a Child, August 4, 1997; 

 Count five: Indecency with a child, August 4, 1997; and

 Count six: Sexual assault of a Child, December 1, 1999. 
2. An unconstitutional ex post facto law (1) punishes as a crime an act previously committed which
was innocent when done, (2) changes the punishment and inflicts a greater punishment than the law attached
to a criminal offense when committed, or (3) deprives a person charged with a crime of any defense available
at the time the act was committed. Johnson v. State, 930 S.W.2d 589, 591 (Tex. Crim. App. 1996) (citing
Collins v. Youngblood, 497 U.S. 37, 42-43 (1990)). The issue in this case focuses on the second definition;
i.e., punishment.